# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs July 8, 2014

## STATE OF TENNESSEE v. WILLIE DUNCAN

**Appeal from the Criminal Court for Shelby County**
**No. 12-02348   Mark Ward, Judge**

_____

**No.   W2013-02554-CCA-R3-CD  - Filed August 27, 2014**

_____

Appellant, Willie Duncan, was convicted by a Shelby County jury of especially aggravated kidnapping, especially aggravated robbery, aggravated robbery, aggravated burglary, and employing a firearm during the commission of a dangerous felony.  On appeal, Appellant raises several issues: 1) the indictment for the charge of employing a firearm during the commission of a dangerous felony is defective for failing to name the underlying felony; 2) the jury instructions on the charge of employing a firearm during the commission of a dangerous felony were improper; 3) the evidence presented at trial was insufficient to support the convictions; 4) a statement about Appellant's juvenile record requires a new trial under plain error review; 5) the trial court abused its discretion by imposing excessive sentences; and 6) the trial court abused its discretion by imposing partially consecutive sentences. Upon review of the record, we find that the evidence is sufficient to support Appellant's convictions, that the statement about Appellant's juvenile record does not constitute plain error, and that the trial court did not abuse its discretion in sentencing Appellant.  However, we find that the indictment for employing a firearm during the commission of a dangerous felony is fatally flawed for failing to name the predicate felony.  We also note a clerical error on the judgment form for the charge of aggravated robbery which requires remand for the entry of a corrected judgment.  Therefore, we affirm the trial court's judgments in part, reverse and dismiss in part, and affirm and remand in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Reversed and Dismissed in Part, Affirmed in Part, and Affirmed and Remanded in Part.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Lance R. Chism, Memphis, Tennessee (on appeal), Arthur E. Horne and Kendra Tidwell, Memphis, Tennessee (at trial) for the appellant, Willie Duncan.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Amy P. Weirich, District Attorney General; Meghan Fowler, Assistant District Attorney General; and Betsy Wiseman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

On May 8, 2012, a Shelby County grand jury indicted Appellant, along with co-defendants Jamar Cobbins and Calvion Morrison, for especially aggravated kidnapping with a deadly weapon, especially aggravated robbery, aggravated robbery, aggravated burglary, and employing a firearm during the commission of a dangerous felony. Appellant was tried by a jury in August of 2013.

At trial, Roderick Gladney testified that on the evening of December 6, 2011, he met his friend Nycholas Shields at a hotel room at the Governor's Inn rented by Mr. Shields. The two men, along with a third person named Juan, began smoking marijuana. Sometime that night, Appellant called Mr. Shields' phone, which Mr. Gladney answered. Appellant asked to buy some marijuana. Mr. Gladney met Appellant in the hallway of the hotel and sold him approximately thirty dollars worth of "couch" marijuana, which is a high grade of marijuana. Mr. Gladney testified that he met Appellant through Mr. Shields and had known him for a few months.

After making the sale, Mr. Gladney returned to the hotel room and fell asleep. Around 6:00 or 7:00 the next morning, Mr. Gladney received a phone call from Mr. Cobbins. Mr. Gladney knew Mr. Cobbins because they had attended the same high school. Mr. Cobbins told Mr. Gladney that Appellant had given him Mr. Gladney's phone number. Mr. Cobbins wanted to buy some marijuana. Mr. Gladney met Mr. Cobbins in the hallway of the hotel. Then Appellant and another young man entered the hallway through a back door of the hotel. Appellant was wearing a mask and carrying a pistol. Mr. Cobbins, Appellant, and the other young man then forced Mr. Gladney back into the hotel room.

Upon entering the hotel room, Appellant pointed the gun at Mr. Shields and demanded money and drugs. Mr. Shields retrieved money from his pockets and threw it on the floor. The young man picked the money up off of the floor. Appellant shot Mr. Gladney in the stomach. After being shot, Mr. Gladney threw money out of his pocket. The young man retrieved the money from the floor, then the three perpetrators ran from the room. Mr. Gladney testified that the young man was laughing as the perpetrators ran. Juan fled the

-2-

room before the police or paramedics arrived, and Mr. Gladney has not heard from him since.

Mr. Gladney was taken to the hospital by paramedics. The bullet pierced his bladder and he had to receive forty-three staples in his stomach, leaving an extensive scar. Mr. Gladney remained in the hospital for seven days. On December 8, 2011, while still in the hospital, Mr. Gladney identified Appellant in a police photo spread. Mr. Gladney testified at trial that he was able to identify Appellant by the sound of his voice.

Mr. Shields testified that on December 6, 2011, he and a friend named Juan rented a room at the Governor's Inn. Around 8:00 that evening, Mr. Gladney arrived. The three men smoked marijuana and shot dice inside the hotel room. At some point, Mr. Gladney stepped outside to sell marijuana to somebody. At approximately 1:00 a.m. on December 7th, Mr. Shields fell asleep. He was awakened around 6:00 a.m. when he heard Mr. Gladney's phone ringing and Mr. Gladney stepped out of the room. Mr. Shields testified that he heard arguing and commotion in the hallway. Mr. Gladney entered the room, screaming that someone was trying to rob him. Then three men entered the hotel, two of whom Mr. Shields recognized as Mr. Cobbins and Mr. Morris. The third man was holding a pistol and wearing a mask. The gunman pointed the pistol at Mr. Shields and demanded money and drugs. Mr. Shields threw approximately one hundred dollars toward the gunman.

Mr. Shields testified that the gunman then pointed the pistol at Mr. Gladney while Mr. Cobbins and Mr. Morris rummaged through Mr. Gladney's pockets. The gunman shot Mr. Gladney in the stomach and Mr. Gladney fell to the ground. The perpetrators ran from the room and fled the scene in a white car. Mr. Morris was laughing as they ran. Mr. Shields called 911. Juan fled the scene with the rest of the marijuana. When the police arrived, Mr. Shields was given a misdemeanor citation for possession of drug paraphernalia because of a digital scale found in his possession.

Mr. Shields testified that after the perpetrators fled the scene, Mr. Gladney told Mr. Shields that the gunman was the person who had called his phone earlier. Mr. Shields went through the phone and saw Appellant's phone number. Mr. Shields then realized that Appellant was the gunman. Mr. Shields identified a picture of Appellant that the police showed him on the afternoon of December 7, 2011.

Jonathan Hall testified that during the early morning hours of December 7, 2011, he was sitting in his car outside of the back door of the Governor's Inn. He saw three men enter the back door of the hotel. After about five minutes, they exited out of the same back door. The police took a statement from Mr. Hall later that same morning, which Mr. Hall signed. While testifying, Mr. Hall stated that he did not recall telling the police that two men wearing black hoods walked into the hotel and then three men, one of whom was carrying a gray

handgun, ran out of the hotel. The statement was entered into evidence, but Mr. Hall testified that the words in the statement were not his words.

Officer Kenneth Walcott of the Memphis Police Department testified that he responded to a disturbance call at the Governor's Inn at 8:25 a.m. on December 7, 2011. When he arrived, Mr. Hall told Officer Walcott that he saw two black men run into the hotel and three run out. Mr. Hall directed Officer Walcott to the room where the shooting had occurred. Officer Walcott knocked on the door, and Mr. Shields answered. The room and hallway had a strong smell of marijuana. Officer Walcott saw Mr. Gladney lying on the bed moaning. Officer Walcott lifted Mr. Gladney's shirt, determined that he had been shot in the stomach, and called for an ambulance.

Sergeant Andre Pruitt arrived at the Governor's Inn and took a type-written statement from Mr. Hall. Mr. Hall told Sergeant Pruitt that he assumed the three men were involved in a robbery because he saw them running away. Sergeant Pruitt testified that Mr. Hall signed the statement and that it was an accurate depiction of Mr. Hall's version of events.

Sergeant Glenn Barber was assigned as the case coordinator. Sergeant Barber took statements from both Mr. Shields and Mr. Gladney. Neither victim ever mentioned Juan. Sergeant Barber testified that Mr. Shields positively identified a photograph of Appellant, and Mr. Gladney identified Appellant in a photographic lineup.

On the afternoon of December 7, 2011, Appellant was arrested and taken to the police station. Sergeant Barber and Sergeant Pruitt advised Appellant of his *Miranda* rights, and Appellant signed a waiver of rights form. Appellant indicated that he was not under the influence of any drugs. Appellant stated that his mother drove him to the hotel around 3:00 in the morning and he bought drugs. Appellant stated that someone called him and asked where they could buy some marijuana. Two people then picked up Appellant and drove him to the hotel to purchase more marijuana. Appellant stated that he never went inside the hotel room and that he did not shoot anyone. Sergeant Barber testified that he did not reduce this statement to writing because of several inconsistencies in the story.

On December 9, 2011, Sergeant Barber questioned Appellant a second time. Appellant was again advised of his *Miranda* rights and signed a waiver of rights form. Appellant gave a statement admitting to his participation in the robbery. Appellant stated that he called "Nick's cousin" in order to buy some marijuana. Around 3:00 in the morning, he asked his mom for a ride to the hotel. He met Mr. Gladney in the hallway and purchased a gram of marijuana. He then went home, smoked some marijuana, and fell asleep. He then got a call from a man known as Kitchen Chris, later identified as Chris Crawford, who was asking where he could buy some marijuana. Appellant got into a white Impala with Mr.

-4-

Crawford, Mr. Morris, and Mr. Cobbins. While driving to the hotel, Mr. Crawford stated, "I ain't buying shit, let's go take it." Appellant was concerned that the victims might identify him since they knew him and had just seen him. Mr. Cobbins offered some stockings from the arm rest of the car. Appellant had a gun that Mr. Crawford had given him.

Appellant stated that Mr. Cobbins entered through the back door of the hotel to meet Mr. Gladney in the hallway. Appellant saw Mr. Cobbins hit Mr. Gladney, then he, Mr. Morris, and Mr. Crawford ran in through the back door. Appellant admitted pointing a gun at Mr. Gladney, then Mr. Cobbins pushed him into the room. Mr. Shields woke up, saw the gun, and started screaming and throwing his money. Appellant claimed that he set the gun down while he was picking some marijuana up off of the floor. Mr. Gladney charged him as he went to pick the gun back up, and the gun went off. Then Appellant and the others drove off and split up the money and marijuana that had been taken. Appellant received forty dollars and a gram of marijuana. Appellant told Sergeant Barber that he did not want to participate in the robbery, that he did not mean for anyone to get hurt, and that he did not mean to shoot Mr. Gladney.

At the conclusion of the trial, the jury found Appellant guilty of especially aggravated kidnapping, especially aggravated robbery, aggravated robbery, aggravated burglary, and employing a firearm during the commission of a dangerous felony.

On September 10, 2013, the trial court held a sentencing hearing. Appellant testified that he used illegal drugs daily from the time he was fourteen until he was arrested on the present offenses. Appellant claimed that the statement to the police from December 9th "wasn't really [his] statement," and that he did not rob or shoot anyone. Appellant admitted he was present in the hotel room when Mr. Gladney was shot. Appellant claimed that he was just purchasing marijuana and that he was not the shooter.

The presentence report indicates that Appellant dropped out of high school after repeating the eleventh grade. Appellant had several juvenile arrests for arson, trespass, gambling, possession of a weapon, and assault; however, Appellant did not have any delinquency adjudications. Appellant reported that he first smoked marijuana at age fourteen and continued to smoke it on a daily basis until his arrest in December, 2011. Appellant reported using Lortab and Xanax daily since the age of sixteen and drinking alcohol occasionally since eighteen. Appellant completed a Drug and Alcohol program and a Life Skills program while awaiting trial on the present charges.

The trial court sentenced Appellant to twenty-three years for especially aggravated kidnapping, twenty-three years for especially aggravated robbery, ten years for aggravated robbery, five years for aggravated burglary, and six years for employing a firearm during the

commission of a dangerous felony. The trial court ordered that the sentences for especially aggravated kidnapping and especially aggravated robbery run concurrent to each other but consecutive to the sentences for aggravated robbery and aggravated burglary, which would also run concurrent to each other. By statute, the sentence for employing a firearm during the commission of a dangerous felony is required to be served consecutively to the sentence for the underlying felony. Appellant was sentenced to a total effective sentence of thirty-nine years.

On October 4, 2013, Appellant filed a timely motion for a new trial. On October 8, 2013, a hearing was held and the trial court entered an order denying the motion. Appellant filed a timely notice of appeal on November 1, 2013.

*Analysis*

On appeal, Appellant raises several issues: 1) the indictment for the charge of employing a firearm during the commission of a dangerous felony is defective for failing to name the underlying felony; 2) the jury instructions on the charge of employing a firearm during the commission of a dangerous felony were improper; 3) the evidence presented at trial was insufficient to support the convictions; 4) a statement about Appellant's juvenile record requires a new trial under plain error review; 5) the trial court abused its discretion by imposing excessive sentences; and 6) the trial court abused its discretion by imposing partially consecutive sentences. We will address each issue in turn.

*I. Employing a Firearm During the Commission of a Dangerous Felony*

Appellant raises two issues with regard to the charge of employing a firearm during the commission of a dangerous felony. First, he alleges that the indictment failed to name the predicate felony and is thereby void. Second, he alleges that the trial judge improperly instructed the jury that it could consider especially aggravated kidnapping with a deadly weapon as one of two underlying felonies to support a conviction. The State concedes that the jury instructions were improper, but does not agree that the indictment is fatally flawed.

*A. Indictment*

Appellant challenges his conviction for employing a firearm during the commission of a dangerous felony on the ground that the indictment failed to state the predicate felony and thereby failed to properly charge an offense. As an initial matter, Appellant concedes that this issue is being raised for the first time on appeal. However, this Court has held that "[t]he waiver provision of Rule 3(e). . . does not apply when the issue, if found to be meritorious, would result in the dismissal of the prosecution of the accused." *State v. Keel*,

882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). If an indictment fails to include an essential element of the offense, then no crime is charged, and the trial court is deprived of subject matter jurisdiction. *State v. Lindsey*, 208 S.W.3d 432, 438 (Tenn. Crim. App. 2006) (quoting *State v. Nixon*, 977 S.W.2d 119, 121 (Tenn. Crim. App. 1997)). Under the Tennessee Rules of Appellate Procedure, we must "consider whether the trial court and appellate court have jurisdiction over the subject matter." Tenn. R. App. P. 13(b). "An allegation that an indictment does not charge an offense is. . . subject to plenary review even if not raised in the trial court." *State v. Alvin Brewer*, Nos. W2012-02281-CCA-R3-CD and W2012-02282-CCA-R3-CD, 2014 WL 1669807, at *26 (Tenn. Crim. App., Apr. 24, 2014). Therefore, we will address this issue on the merits.

Under both the United States and Tennessee Constitutions, an accused is guaranteed the right to be informed of the nature and cause of the accusation. U.S. Const. Amend. VI; Tenn. Const. Art. I, §9. To satisfy this constitutional requirement, an indictment must include sufficient information to "1) provide notice to the accused of the offense charged; 2) provide the court with an adequate ground upon which a proper judgment may be entered; and 3) provide the defendant with protection against double jeopardy." *Lindsey*, 208 S.W.2d at 438 (quoting *Wyatt v. State*, 24 S.W.3d 319, 324 (Tenn. 2000)); *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997). Furthermore, an indictment is statutorily required to "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to engage a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." T.C.A. § 40-13-202. Challenges to the validity of an indictment present a question of law and are reviewed de novo. *Lindsey*, 208 S.W.3d at 438; *Alvin Brewer*, 2014 WL 1669807, at *27.

Under Tennessee Code Annotated section 39-17-1324(b)(1), it is a crime to employ a firearm during the commission of a dangerous felony. A dangerous felony can be any of the statutorily enumerated offenses, including especially aggravated kidnapping and aggravated burglary. T.C.A. § 39-17-1324(i)(1). "The statute requires that the underlying dangerous felony be included as a separate count in the same indictment, but it is silent on whether the predicate dangerous felony must be named in the count charging a violation of Code section 39-17-1324." *State v. Chad Medford*, E2012-00335-CCA-R3-CD, 2013 WL 2424137, at *18 (Tenn. Crim. App., Jun. 5, 2013) (internal citations omitted); *see* T.C.A. § 39-17-1324(d). Whether the predicate felony constitutes an essential element of the offense, without which the indictment is fatally defective, "presents a close question." *State v. Michael L. Powell*, No. E2011-00155-CCA-R3-CD, 2012 WL 1655279, at *13 (Tenn. Crim. App., May 10, 2012) (deciding issue on other grounds).

Typically, "an indictment which references the statute defining the offense is

sufficient and satisfies the constitutional and statutory requirements." *Id*. (quoting *State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000)). However, this Court has recognized that an indictment that cites Tennessee Code Annotated section 39-17-1324, but does not name the specific predicate felony, may not be sufficient to provide notice of the crime charged because of the multiple possible predicate felonies listed in the statute. *See State v. Demeko Gerard Duckworth*, No. M2012-01234-CCA-R3-CD, 2013 WL 1933085, at *21 (Tenn. Crim. App., Feb. 27, 2013). "Only 'where the constitutional and statutory requirements outlined in *Hill* are met,' will 'an indictment that cites the pertinent statute and uses its language' be deemed 'sufficient to support a conviction.'" *State v. Larry Jereller Alston*, No. E2012-00431-CCA-R3-CD, 2013 WL 2382589, at *14 (Tenn. Crim. App., May 30, 2013), *perm. app. granted* (Tenn. Jan. 17, 2014) (quoting *State v. Carter*, 988 S.W.2d 145, 149 (Tenn. 1999)); *see Hill*, 954 S.W.2d at 727.

The approach taken by this Court has been to determine whether the other counts in the indictment can be read together for the purpose of providing notice to the defendant of the applicable underlying felony. It has long been held that "[e]ach count must be a complete indictment within itself, charging all the facts and circumstances that make the crime." *State v. Lea*, 41 Tenn. 175, 177-8 (1860); *see also Dunn v. United States*, 284 U.S. 390, 393 (1932). However, "if it is reasonably clear from the averments of the second count that this is connected with and part of the preceding count . . . such a count may be considered good." *State v. Youngblood*, 287 S.W.2d 89, 91 (Tenn. 1959). "[V]arious panels of this court have held that in order for an indictment to be valid, the defendant must be made reasonably certain of the predicate felony underlying a conviction for employing a firearm during the commission of a dangerous felony." *Alvin Brewer*, 2014 WL 1669807, at *30.

In some cases, we have found that the indictment, read as a whole, provided the defendant with sufficient notice of the underlying felony to the firearms charge. In *Demeko Gerard Duckworth*, this Court found that in a four-count indictment, in which only a charge of attempted first degree murder qualified as a dangerous felony under the statute, it was "'reasonably clear' that the charge of employing a firearm during the commission of a dangerous felony is connected to the count of attempted first degree murder such that the indictment is not void for lack of notice." 2013 WL 1933085, at *22. In *Chad Medford*, this Court was presented with a four-page, ten-count indictment that included both aggravated burglary and especially aggravated kidnapping as potential predicate felonies to the firearms charge. The two counts of aggravated burglary and the count of employing a firearm during the commission of a dangerous felony were presented together on the first page of the indictment. "Because the aggravated burglary charges, and no other counts alleging a dangerous felony, immediately precede[d] the charge of employing a firearm during the commission of a dangerous felony," we again found that the defendant was provided with "reasonably clear" notice that the two charges were related. 2013 WL 2424137, at *19.

However, in other cases, we have found that the indictment as a whole did not provide sufficient notice of the specific predicate felony. In *Larry Jereller Alston*, the defendant was charged in a four-count indictment where both aggravated burglary and especially aggravated kidnapping were on the first page and the firearms charge was on the second page. This Court found that "[n]othing in the fourth count connects it specifically to the aggravated burglary or suggests that aggravated burglary, as opposed to especially aggravated kidnapping, serves as the predicate felony." 2013 WL 2382589, at *14. We found that "[t]he failure of the indictment to name the underlying dangerous felony leaves the defendant with inadequate notice of the charges against him," and concluded that "[u]nder these circumstances, the separate counts of the indictment cannot be read together to save the fatally defective omission." *Id*. Similarly, in *Alvin Brewer*, this Court found that when charges for several dangerous felonies precede the firearms offense in a multi-count indictment, "there is simply no way to distinguish which charge the State was relying upon as the designated predicate felony." 2014 WL 1669807, at *28.

Appellant in this case was charged in a five-count indictment with each offense listed on a separate page. The last count charges the Appellant with "unlawfully and knowingly employ[ing] a firearm during the commission of an offense as defined in T.C.A. 39-17-1324(i)(1), in violation of T.C.A. 39-17-1324(b)." This case is similar to both *Larry Jereller Alston* and *Alvin Brewer*, and distinguishable from *Chad Medford*, in that the firearms charge is preceded by both the aggravated burglary charge and the especially aggravated kidnapping charge. *See Larry Jereller Alston*, 2013 WL 2382589, at *14; *Alvin Brewer*, 2014 WL 1669807, at *28; *Chad Medford*, 2013 WL 2424137, at *19. While these unreported cases are not binding precedent, we do find their rationale to be persuasive. Therefore, we find that it is not reasonably clear which of the preceding charges the State was relying upon as the designated predicate felony, and the indictment against Appellant cannot be read as a whole to supply adequate notice of the crime charged.

The State argues that the indictment is not fatally defective because only the aggravated burglary charge can properly serve as the predicate felony. A person cannot be charged with employing a firearm during the commission of a dangerous felony "if possessing or employing a firearm is an essential element of the underlying dangerous felony as charged." T.C.A. § 39-17-1324(c). This Court has applied this limitation when the dangerous felony is charged as being committed with a deadly weapon and the only weapon presented in the evidence is a firearm. *See Anthony D. Byers v. State*, No. W2011-00473-CCA-R3-PC, 2012 WL 938976, at *9 (Tenn. Crim. App., March 15, 2012), *perm. app. denied* (Tenn. Aug. 15, 2012). Appellant in this case was charged with especially aggravated kidnapping with a deadly weapon, and the only deadly weapon presented in the evidence was a firearm. Therefore, according to the State, Appellant had sufficient notice that the only viable predicate felony was the charge of aggravated burglary. However, we disagree with

this rationale.

At the time of the indictment, there are no facts in evidence from which to determine whether the "deadly weapon" in the especially aggravated kidnapping charge is a firearm. Tennessee Code Annotated section 39-17-1324(c) directs us to examine the predicate felony "as charged" to determine whether it includes the use of a firearm as an element. We do recognize that "[i]f the State could avert the constraints of the statute by always using the term 'deadly weapon' instead of 'firearm' when the deadly weapon at issue was clearly and solely a firearm, then section 1324(c) would essentially become meaningless because the State would never use the term 'firearm' in an indictment." *Anthony D. Byers*, 2012 WL 938976, at *9. However, the defendant in *Anthony D. Byers* was challenging an improper conviction based on double jeopardy principles. The challenge in this case, like that in *Larry Jereller Alston* and *Alvin Brewer*, is to the validity of the indictment and whether it provides proper notice, which must be determined before we can look to the validity of the subsequent convictions. *See Larry Jereller Alston*, 2013 WL 2382589, at *14; *Alvin Brewer*, 2014 WL 1669807, at *29 (citing *State v. Perkinson*, 867 S.W.2d 1, 5 (Tenn. Crim. App. 1992)) ("When an indictment fails to fully state the crime, all subsequent proceedings are void.").

In a situation such as this one, where the indictment for employing a firearm during the commission of a dangerous felony does not name the predicate felony and the defendant is charged with multiple felonies that could qualify under section 1324(i)(1), we cannot look to the evidence that is later introduced at trial to determine which felonies may be disqualified under section 1324(c). "A defendant is constitutionally entitled to notice of what crime he is charged with committing." *Alvin Brewer*, 2014 WL 1669807, at *29. Appellant should not have to guess whether the State is properly charging the firearms offense based on aggravated burglary or improperly based on especially aggravated kidnapping with a deadly weapon. In *Alvin Brewer*, we rejected a similar argument made by the State, "question[ing] whether 'common understanding' [required of indictments under Tennessee Code Annotated section 40-13-202] would exist that especially aggravated kidnapping could not serve as a predicate felony if a firearm was utilized when the very statute setting forth the dangerous felonies denotes especially aggravated kidnapping." *Id*. at *30. There is nothing within the text of the indictments at issue to distinguish that the aggravated burglary charge was meant to serve as the predicate dangerous felony to the firearms charge, rather than the especially aggravated kidnapping charge.

We find that the indictment for employing a firearm during the commission of a dangerous felony is missing an essential element and is, therefore, void for lack of adequate notice. The proper remedy is dismissal of the indictment rather than a remand for a new trial. *See Larry Jereller Alston*, 2013 WL 2382589, at *12 ("the failure of an indictment to provide constitutionally adequate notice results in a void indictment requiring dismissal"); *accord.*

*Demeko Gerard Duckworth*, 2013 WL 1933085, at \*19 ("the remedy, should this court find the defendant's claim meritorious, would be a dismissal of the indictment rather than a remand for a new trial"); *cf. Michael L. Powell*, 2012 WL 1655279, at \*13 (remanded for a new trial because of improper jury instructions without deciding the validity of the underlying indictment). The judgment of the trial court is reversed and the charge of employing a firearm during the commission of a dangerous felony is dismissed.

*B. Jury Instruction*

Both Appellant and the State agree that the trial court committed plain error when it instructed the jury that it could consider either aggravated burglary or especially aggravated kidnapping as the predicate felony to the charge of employing a firearm during the commission of a dangerous felony. "It is well-settled that a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011).

The trial court instructed the jury that, in order to find Appellant guilty of employing a firearm during the commission of a dangerous felony, they had to find beyond a reasonable doubt "that the employment was during the commission of or attempt to commit especially aggravated kidnapping or aggravated burglary," and that they had to unanimously agree on which dangerous felony. However, as explained above, especially aggravated kidnapping with a deadly weapon could not be the predicate felony under Tennessee Code Annotated section 39-17-1324(c) when the only weapon in evidence is a firearm. *See Anthony D. Byers*, 2012 WL 938976, at \*9. Therefore, the possibility exists that the jury convicted Appellant in contravention of the statute. *See State v. Trutonio Yancey*, No. W2011-01543-CCA-R3-CD, 2012 WL 4057369, at \*9 (Tenn. Crim. App., Sept. 17, 2012), *perm. app. denied* (Tenn. Jan. 14, 2013); *Michael L. Powell*, 2012 WL 1655279, at\*14.

Typically, "[t]he remedy for an instructional error of this magnitude is reversal of the convictions and remand for a new trial." *Michael L. Powell*, 2012 WL 1655279, at \*15.[1] However, because we have already determined that the indictment on the firearms charge is void and must be dismissed, there is no crime before the court on which to have a new trial. Therefore, this issue is moot.

---

[1] Tennessee Code Annotated section 39-17-1324(d) specifies that the offense of employing a firearm during the commission of a dangerous felony "shall be . . . tried before the same jury and at the same time as the dangerous felony." If the firearms offense is the only charge being remanded for a new trial, we do not see how the State could retry a defendant without violating the statute.

## II. Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, the standard of review applied by this Court is "whether, considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)); *see Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); Tenn. R. App. P. 13(e). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). The jury's verdict replaces the presumption of innocence with one of guilt, and the burden is on the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *Reid*, 91 S.W.3d at 277. This standard of review applies whether the conviction was based on direct evidence, circumstantial evidence, or a combination of the two. *Dorantes*, 331 S.W.3d at 379.

Furthermore, questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn.2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to re-weigh the evidence nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.*; *Dorantes*, 331 S.W.3d at 379.

Especially aggravated kidnapping is defined as "knowingly remov[ing] or confin[ing] another unlawfully so as to interfere substantially with the other's liberty," that is accomplished with a deadly weapon. T.C.A. §§ 39-13-302, -305(a)(1). "[T]he victim's removal or confinement [must exceed] that which is necessary to accomplish [an] accompanying felony," such as robbery. *State v. White*, 362 S.W.3d 559, 578 (Tenn. 2012). Trial and appellate courts are no longer required to conduct a separate due process review to determine "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping," as they had been under *State v. Anthony*, 817 S.W.2d 299, 306 (Tenn. 1991). *See White*, 362 S.W.3d at 578. Instead, "whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law." *Id.* at 577. Because the trial court in this case gave the jury instruction developed by *White*, our review of the sufficiency of the convicting evidence is sufficient to protect Appellant's due process rights. *See id.* at 580-81.

Especially aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear," accomplished with a deadly weapon, and where "the victim suffers serious bodily injury." T.C.A. §§ 39-13-401(a) and -403(a). Aggravated robbery is a robbery accomplished "with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1). Aggravated burglary is committed when a person, "without the effective consent of the property owner," enters a habitation with the "intent to commit a . . . theft." T.C.A. §§ 39-14-402(a)(1) and -403(a). Habitation is defined as "any structure . . . designed or adapted for the overnight accommodation of persons." T.C.A. § 39-14-401(1)(A).

The evidence presented to the jury showed that in the early morning hours of December 7, 2011, Mr. Gladney met with Appellant in the hallway outside of the hotel room to sell him some marijuana. Appellant later told some of his friends that Mr. Gladney was selling marijuana, and a second purchase was arranged. Appellant's co-defendant, Mr. Cobbins, met Mr. Gladney in the hall around 6:00 or 7:00 that morning. Appellant, armed with a gun, and the third co-defendant, Mr. Morris, rushed in and forced Mr. Gladney back into the hotel room. Once in the room, Appellant demanded money and drugs. Even though Appellant was wearing a mask, Mr. Gladney recognized his voice. Mr. Shields, awoken by the entrance of the men into the hotel room, threw money onto the floor. Appellant shot Mr. Gladney in the stomach before obtaining money from him as well. The three perpetrators then fled the room, with one of the co-defendants laughing as they ran. The victims' testimony was corroborated by the statement Appellant gave police on December 9, 2011, admitting that he participated in the robbery and shot Mr. Gladney. The evidence in this case was sufficient to support Appellant's convictions on all counts.[2]

Appellant argues that "the victims' testimony was riddled with inconsistencies [such that] no reasonable juror could have accredited their testimony." However, it is a well-settled principle that witness credibility is a matter left solely to the trier of fact. As our supreme court explained almost half a century ago:

> The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

---

[2]Because we have dismissed the indictment for employing a firearm during the commission of a dangerous felony, we will not address it in this section.

*Bolin v. State*, 405 S.W.2d 768, 771 (1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). We are not in a position to re-evaluate the determination of witness credibility. We must assume, based on the guilty verdict, that the jury accredited the victims' testimony and resolved all conflicts with it. *See Reid*, 91 S.W.3d at 277. Additionally, Appellant's own statement to the police corroborated the victims' testimony.

Appellant also argues that the evidence was insufficient to establish his identity as one of the participants in this crime. However, "[i]t is well-established that the identification of a defendant as the person who committed the offense for which he is on trial is a question of fact for the determination of the jury upon consideration of all competent proof." *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing *Strickland*, 885 S.W.2d at 87-88). Even though the gunman was wearing a mask, Mr. Gladney testified that he recognized Appellant's voice. Mr. Gladney had met with Appellant just hours before to sell him some marijuana, and it is reasonable to assume that he would be able to identify Appellant's voice. Additionally, Appellant admitted to his participation in the robbery and that he was the person who had the gun and shot Mr. Gladney.

Finally, Appellant argues that no reasonable juror could have accredited the detailed confession he gave to the police on December 9th because of the statement he made two days prior denying any involvement. However, inconsistent statements made by a defendant following a crime raise an inference of guilt. *See State v. Caldwell*, 80 S.W.3d 31, 40 (Tenn. Crim. App. 2002). The jury was free to determine which statement made by Appellant they would accredit and how much weight to give to the conflicting statements. *See State v. Keough*, 18 S.W.3d 175, 182 (Tenn. 2000); *State v. Mark Anthony Hopper*, No. 03C01-9202CR00064, 1992 WL 340580, at *2 (Tenn. Crim. App., Nov. 20, 1992). Appellant's confession, corroborated by the testimony of the victims, should not be disregarded simply because he gave an earlier, self-serving statement denying any involvement in the robbery.

Viewing the evidence presented in the light most favorable to the State, we find that the evidence was sufficient to support Appellant's convictions for the especially aggravated kidnapping and especially aggravated robbery of Mr. Gladney, the aggravated robbery of Mr. Shields, and the aggravated burglary of the hotel room occupied by both victims. Therefore, we affirm the judgments of the trial court as to these four counts.

*III. Comment about Appellant's Juvenile Record*

During Sergeant Barber's direct examination, he testified that during the course of his investigation, he determined Appellant had a juvenile record. Defense counsel immediately objected. After a brief bench conference, the trial court sustained the objection and instructed the jury to disregard the statement and not consider any reference to Appellant's juvenile record. Defense counsel did not ask for a mistrial. The motion for a new trial contains only the general allegation "[t]hat before and/or during the course of this trial, [Appellant's] undersigned counsel objected and/or took exception to several rulings by [the trial court] which the defense contends were ultimately prejudicial to [Appellant] in this cause." Appellant now contends on appeal that the statement made by Sergeant Barber mandates a new trial under plain error review.

When an error was not included in a motion for a new trial, a defendant may seek relief under plain error analysis. *See* Tenn. R. App. P. 36(b). There are five factors that must be established before an error may be recognized as plain:

> (a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law was breached; (c) a substantial right of the accused was adversely affected; (d) the accused did not waive the right for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). "[C]omplete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id*. at 283. The burden is on the accused to persuade the appellate court that the trial court committed plain error and that the error was of "such a great magnitude that it probably changed the outcome of the trial." *Id*. (quoting *Adkisson*, 899 S.W.2d at 642); *see also* Tenn. R. App. P. 36(b) (relief may be granted when an "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process").

In this case, there was no breach of a clear and unequivocal rule of law. Appellant argues that Sergeant Barber's statement was inadmissible under the Rules of Evidence as irrelevant and impermissible character evidence. *See* Tenn. R. Evid. 401 and 404(b). However, the trial court sustained defense counsel's contemporaneous objection to the statement and instructed the jury to disregard it. The jury is presumed to obey the instructions of the trial court. *See State v. Banks*, 271 S.W.3d 90, 134 (Tenn. 2008). As this Court has previously explained, if a party is "dissatisfied with the [curative] instruction given

and does not request a more complete instruction, the party effectively waives the issue for appellate purposes." *State v. Karen E. Carpenter*, No. E2010-02391-CCA-R3-CD, 2011 WL 4346655, at *4 (Tenn. Crim. App., Sept. 19, 2011), *perm. app. denied* (Tenn. Dec. 14, 2011) (quoting *State v. Griffis*, 964 S.W.2d 577, 599 (Tenn. Crim. App. 1997)); *see also* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Moreover, the decision whether to grant a mistrial in such a situation is left to the discretion of the trial court. *State v. Nash*, 294 S.W.3d 541, 546 (Tenn. 2009). We find no plain error on the part of the trial court with respect to Sergeant Barber's statement. This issue is without merit.

## IV. Sentencing

Finally, Appellant challenges the trial court's sentencing determinations and the imposition of partially consecutive sentences. Under the Tennessee Supreme Court decision in *State v. Bise*, we review the trial court's sentencing determinations under the "abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to the decision to impose consecutive sentences. *State v. James Allen Pollard*, — S.W.3d —, No. M2011-00332-SC-R11-CD, 2013 WL 6732667, at *7 (Tenn., Dec. 20, 2013). We will review each issue in turn.

## A. Length of Sentence

The trial court sentenced Appellant to twenty-three years for especially aggravated kidnapping, twenty-three years for especially aggravated robbery, ten years for aggravated robbery, and five years for aggravated burglary.[3] Appellant contends that the trial court imposed an excessive sentence for these convictions. The State disagrees.

In order to promote justice in sentencing, "[e]very defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-102(1). Additionally, "[t]he sentence imposed should be no greater than that deserved for the offense committed," and "should be the least severe measure necessary to

---

[3]Appellant was also sentenced to six years for employing a firearm during the commission of a dangerous felony, which is the mandatory minimum sentence for that charge and which must be served consecutively to the conviction on the underlying dangerous felony. *See* T.C.A. § 39-17-1324(h)(1) and -1324(e). However, because we have dismissed the indictment on that count for failing to state the underlying dangerous felony, the sentence is likewise dismissed and we need not address it in this section.

achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4). The trial court should consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant. . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5).

Under the 2005 amendments to the Sentencing Act, a trial court must consider the following factors when determining a defendant's specific sentence:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court "shall place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." T.C.A. § 40-35-210(e); *see also Bise*, 380 S.W.3d at 706 n. 41.

The trial court should consider, but is not otherwise bound by, the advisory sentencing guidelines that "[t]he minimum sentence within the range of punishment is the sentence that should be imposed," and that "[t]he sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors." T.C.A. § 40-35-210(c). However, a "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from" the Sentencing Act. *Bise*, 380 S.W.3d at 706. Therefore, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

Especially aggravated kidnapping and especially aggravated robbery are both Class A felonies. T.C.A. § 39-13-305(b)(1) and -403(b). A Range I sentence for a Class A felony is between fifteen and twenty-five years. T.C.A. § 40-35-112(a)(1). Aggravated robbery is a Class B felony, for which a Range I sentence is between eight and twelve years. T.C.A. § 39-13-402(b) and § 40-35-112(a)(2). Aggravated burglary is a Class C felony, for which a Range I sentence is between three and six years. T.C.A. § 39-14-403(b) and § 40-35-

112(a)(3). The sentences imposed in this case are within these statutory ranges and are, therfore, presumptively reasonable.

As an enhancement factor, the trial court found that Appellant had a previous history of criminal behavior based upon his admitted daily use of illegal drugs since he was fourteen years old. *See* T.C.A. § 40-35-114(1). The court did not consider any of Appellant's juvenile arrests as an enhancement factor since he was never adjudicated delinquent. *See* T.C.A. § 40-35-114(16). The court found that Appellant was a leader in the commission of an offense which involved two or more actors. *See* T.C.A. § 40-35-114(2). Specifically, the court found that Appellant "was the one that bore the gun in this event and shot the victim in the stomach, so I think that qualifies him as the leader." The court did not find any mitigating factors to be applicable, particularly in that Appellant did not accept responsibility for his actions.

Appellant argues that the trial court misapplied enhancement factor (1) – "the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," T.C.A. § 40-35-114(1) – because the majority of his drug use occurred while he was a juvenile. Appellant points to a line of cases based on *State v. Jackson*, 60 S.W.3d 738 (Tenn. 2001), to support the proposition that enhancement factor (1) applies only to adult criminal conduct. *See State v. Jeffery B. Johnson, Jr.*, No. M2010-01721-CCA-R3-CD, 2012 WL 2356553 (Tenn. Crim. App., June 20, 2012); *State v. Katia Lenee Harris*, No. M2006-02611-CCA-R3-CD, 2007 WL 4125460 (Tenn. Crim. App., Nov. 16, 2007). However, the issue in those cases was the improper use of the defendant's juvenile record when the only adjudications were for misdemeanors. Using factor (1) in this scenario would render factor (16) – "the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult," T.C.A. § 40-35-114(16) – "inoperative, superfluous, void, or insignificant." *Jackson*, 60 S.W.3d at 742 (quoting *Tidwell v. Collins*, 522 S.W.2d 674, 676-77 (Tenn. 1975)). Those cases did not address whether admitted drug use as a juvenile constitutes "criminal behavior" under enhancement factor (1).

This Court has consistently held that "[c]riminal behavior not resulting in a criminal conviction may be considered under enhancement factor [(1)]." *State v. Jason Curtis Johnson*, No. M2003-03060-CCA-R3-CD, 2006 WL 407767, at *17 (Tenn. Crim. App., Feb. 17, 2006) (citing *State v. Carico*, 968 S.W.2d 280, 288 (Tenn.1998); *State v. Alexander*, 957 S.W.2d 1, 7 (Tenn. Crim. App. 1997); *State v. Ladella Renee Hill*, No. M2003-00127-CCA-R3-CD, 2004 WL 63483, at *7 (Tenn. Crim. App., Jan. 14, 2004)). We have previously applied enhancement factor (1) to juvenile drug use, drawing a distinction between criminal behavior and criminal convictions. In *Ladella Renee Hill*, we held that "to the extent that the trial court relied on the [d]efendant's juvenile convictions [for assault] to

find that this enhancement factor applied, it erred. However, we have previously held that a defendant's admitted history of drug use may be relied upon when finding that a defendant has a history of criminal behavior." 2004 WL 63483 at \*7 (citations omitted). In a very similar case to the one at bar, we found that the trial court correctly applied enhancement factor (1) to a seventeen-year-old defendant's admitted daily use of marijuana since he was twelve years old, as well as drinking alcohol and taking Xanax since he was fourteen. *State v. James Harding Dalton*, No. M2012-01575-CCA-R3-CD, 2013 WL 3754838, at \*4 (Tenn. Crim. App., July 18, 2013). We find that the trial court in this case did not err when it found that Appellant's extensive drug use, including daily use of marijuana and pills, constituted a previous history of criminal behavior.

Appellant also argues that the trial court erred in applying enhancement factor (2) – "the defendant was a leader in the commission of an offense involving two or more criminal actors," T.C.A. § 40-35-114(2). Appellant submits that, based on his statement to the police, a fourth individual by the name of Chris Crawford, also known by the nickname Kitchen Chris, initiated the crime by asking Appellant where he could buy marijuana and by giving Appellant the gun. According to Appellant, Mr. Crawford stated, "I ain't buying shit, let's go take it." One of Appellant's co-defendants, Mr. Cobbins, met Mr. Gladney in the hallway and started attacking Mr. Gladney before Appellant and the third co-defendant entered the hotel. Appellant said in his statement that he did not want to participate in the robbery and he never admitted to planning it.

However, enhancement factor (2) "does not require that the defendant be the sole leader but rather that he be 'a leader.'" *State v. Freeman*, 943 S.W.2d 25, 30 (Tenn. Crim. App. 1996) (citing *State v. Hicks*, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993)). In other words, it is possible for multiple people to lead during part or all of the offense. In this case, while Mr. Crawford may have suggested the idea of robbing Mr. Gladney rather than paying for the marijuana, Appellant was the one who told the group that Mr. Gladney was selling a high grade of marijuana, who used the gun to force Mr. Gladney back into the hotel room, who demanded drugs and money from both Mr. Gladney and Mr. Shields, and who shot Mr. Gladney in the stomach when he did not immediately comply. We find that the trial court did not err in finding Appellant to be a leader in the commission of these offenses.

After reviewing the record, we find that the trial court did not abuse its discretion in sentencing Appellant. It correctly applied two enhancement factors and found no mitigating factors to be applicable. The sentences imposed by the trial court fall within the proscribed statutory ranges for each offense. We find that the length of the sentences imposed were reasonable and comport with the principles of sentencing. Therefore, we affirm the judgment of the trial court.

Appellant noted a clerical error on the judgment form for the conviction for aggravated robbery. Under Tennessee Code Annotated section 40-35-501(k)(1), "[t]here shall be no release eligibility for a person committing aggravated robbery, as defined in § 39-13-402(a)(1), on or after July 1, 2010, until the person has served eighty-five percent (85%) of the sentence imposed by the court less sentence credits earned and retained." The trial court incorrectly checked the box for Standard 30% Release Eligibility. Therefore, we remand this count to the trial court for entry of a corrected judgment. *See* Tenn. R. Crim. P. 36 ("the court may at any time correct clerical mistakes in judgments . . . arising from oversight or omission.")

### B. Partially Consecutive Sentences

The trial court ordered that Appellant's twenty-three-year sentences for especially aggravated kidnapping and especially aggravated robbery run concurrently with each other but consecutively to the ten-year sentence for aggravated robbery and five-year sentence for aggravated burglary, for a total effective sentence of thirty-three years.[4]

When a defendant has been convicted of multiple crimes, the trial court may order that the sentences be served consecutively if it finds by a preponderance of the evidence that the defendant qualifies under one of the seven categories listed in Tennessee Code Annotated section 40-35-115(b). "The existence of a single category is sufficient to warrant the imposition of consecutive sentences." *Demeko Gerard Duckworth*, 2013 WL 1933085, at *24 (citing *State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997)). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *James Allen Pollard*, 2013 WL 6732667, at *9; *see* Tenn. R. Crim. P. 32(c)(1).

In this case, the trial court found that Appellant was "an offender whose record of criminal activity is extensive" based on both the present convictions as well as Appellant's admitted daily use of illegal drugs since he was fourteen. *See* T.C.A. § 40-35-115(b)(2). Even though Appellant did not have any prior convictions, it is well-settled that a trial court may rely upon the instant offenses "to establish that an offender has an extensive criminal history for the purposes of consecutive sentencing." *State v. Deshaun Emmanuel Brown*, No. M2011-01383-CCA-R3-CD, 2012 WL 6115603, at *11 (Tenn. Crim. App., Dec. 10, 2012), *perm. app. denied* (Tenn. Apr. 10, 2013) (citing *State v. Cummings*, 868 S.W.2d 661, 667 (Tenn. Crim. App. 1992)). Additionally, this Court has previously held that "[p]rior criminal

---

[4]Again, this does not include the six-year sentence for employing a firearm during the commission of a dangerous felony.

activity does not require prior convictions; prior criminal behavior is sufficient." *State v. Hayes*, 337 S.W.3d 235, 267 (Tenn. Crim. App. 2010) (quoting *State v. William Lewis Houston*, M1999-01430-CCA-R3-CD, 2000 WL 1793088, at *12 (Tenn. Crim. App., Dec. 7, 2000)). Consideration of Appellant's criminal behavior as a juvenile was not improper. As our supreme court has held, "[w]hen determining whether sentences should run consecutively or concurrently, trial courts are not limited to considering the defendant's criminal activity or conduct that occurred after the defendant's eighteenth birthday." *State v. Banks*, 271 S.W.3d 90, 147 (Tenn. 2008).

Appellant argues that the extensive criminal activity category for consecutive sentences should not apply because all five of the present convictions arose out of a single criminal episode, this is his first encounter with the adult judicial system, and his extensive history of drug use constitutes non-violent, misdemeanor activity. The State, however, points out that, "as typified by the instant case, . . . illegal drug use is a catalyst and precursor to violent crimes," citing the United States Supreme Court decision in *Harmelin v. Michigan*:

> Quite apart from the pernicious effects on the individual who consumes illegal drugs, such drugs relate to crime in at least three ways: (1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture.

501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (citations omitted).

This case, best characterized as a "drug deal gone bad," typifies some of the dangers inherent in illegal drug use that were identified by the United States Supreme Court more than twenty years ago. At most, Appellant's argument about his prior non-violent behavior simply goes to the weight that should be given to this factor. However, it is not the role of this court to re-weigh the evidence. The decision of the trial court is entitled to a presumption of reasonableness under *Pollard*. We cannot say that the trial court abused its discretion in finding that Appellant had a history of criminal activity sufficient to justify the imposition of consecutive sentences.

The trial court also found that Appellant was "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." *See* T.C.A. § 40-35-115(b)(4). In order to impose consecutive sentences under the dangerous offender category, the trial court is required to make two additional findings: "that an extended sentence is necessary to protect the public

against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). "The need for the additional findings before imposing consecutive sentencing on the basis of the 'dangerous offender' provision arises, in part, from the fact that this category 'is the most subjective and hardest to apply.'" *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (quoting *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999)).

The trial court made the following findings with regard to the dangerous offender category:

> I also find that [Appellant] is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. I also find that the circumstances surrounding the commission of this offense were aggravated.
>
> Essentially he gut shot this man, the victim in this case of the especially aggravated robbery, for absolutely no reason whatsoever. Could have completed this robbery without the need to gut shoot the man, but apparently did so for absolutely no reason whatsoever.
>
> I also find that confinement for an extended period of time is necessary to protect society from [Appellant's] unwillingness to lead a productive life and [Appellant's] resort to criminal activity in furtherance of an anti-societal lifestyle. And I do find that the aggregate length of the sentences that I plan to impose reasonably relate to the offense for which [Appellant] stands convicted.

We find that the trial court made the appropriate *Wilkerson* findings and properly articulated its reasoning; therefore, the imposition of consecutive sentences is presumptively reasonable under *Pollard*. We find no abuse of discretion in imposing consecutive sentences based on the dangerous offender category.

Appellant argues that the imposition of consecutive sentences is not necessary to protect the public from further criminal activity because of his potential for rehabilitation. This Court has explained that "[t]he primary purpose of consecutive sentences . . . is to protect the public from an individual not likely to be rehabilitated." *State v. Brewer*, 875 S.W.2d 298, 303 (Tenn. Crim. App. 1993). Appellant argues that he is still young enough to be rehabilitated and that his honesty about his drug use coupled with his completion of a drug and alcohol program while awaiting trial demonstrates his potential for rehabilitation. However, the trial court stated in its ruling, "I find that [Appellant's] lack of acceptance of

responsibility or remorse bears on the issue of his capability of rehabilitation. I'm not sure that he is capable of being rehabilitated." This Court has previously held that acceptance of responsibility for one's actions is "relevant to assessing the degree of rehabilitation potential shown by the defendant." *State v. Anderson*, 857 S.W.2d 571, 574 (Tenn. Crim. App. 1992). The trial court is in the best position to determine Appellant's demeanor in this regard. *See id.* ("Since the trial court was in the best position to determine his attitude and demeanor, we are not in a position to view the defendant differently upon the record before us."). The trial court did take Appellant's youth into account when it decided to impose only partially consecutive sentences. We are not persuaded that the trial court's imposition of partially consecutive sentences was unreasonable or reflected an abuse of discretion. We affirm the judgments of the trial court.

## CONCLUSION

Based on the foregoing reasons, we affirm the convictions and sentences for the charges of especially aggravated kidnapping, especially aggravated robbery, and aggravated burglary. We affirm the conviction and sentence for the charge of aggravated robbery, but remand to the trial court for entry of a corrected judgment form. We reverse the conviction and dismiss the indictment for the charge of employing of a firearm during the commission of a dangerous felony.

_____
JERRY L. SMITH, JUDGE